Green v. Brown.

---

SAME TERM.    *Before the same Justices.*

GREEN, adm'r of Brown, *vs.* S. BROWN, ex'r of James Brown.

The report of referees, like the verdict of a jury, is only to be set aside where the finding is clearly against the weight of evidence, or where, upon the trial, some rule of evidence, or principle of law, has been violated.

Although a defendant has been precluded, by a judge's order, from making a set-off, by reason of his neglect to furnish a bill of particulars, yet where the plaintiff's claim is founded on an implied liability of the defendant, for a *quantum meruit*, the defendant may show that the plaintiff's demand was compensated at the time, by services rendered, and that therefore no such liability ever arose.

Minutes of testimony, taken by counsel, or by a judge, on a former trial, can only be resorted to as memoranda to refresh the memory of a witness testifying to what then took place.

Where a person testifying to what was sworn to by a witness on a former occasion, states that he took minutes of the testimony, and intended to take down what the witness swore to, and believes he did so, but that he has no remembrance of the witness' testimony, independent of his minutes, he cannot be allowed to state the contents of his minutes.

It is necessary that a witness testifying after inspecting a memorandum in court, should be able, after such inspection, distinctly to recollect the facts, independent of the written memorandum.

After several witnesses have been examined, before referees, as to the characters of other witnesses, the referees have a right to interfere, and to refuse to hear further testimony upon that question.

MOTION to set aside a report of referees. The action was assumpsit, and was brought by the plaintiff as administrator of Stephen Brown, deceased, to recover for the board, nursing, &c. of James Brown, deceased, and of his father, Abraham Brown, deceased. The defendant pleaded the general issue, and the statute of limitations. The cause having been referred to referees, was heard before them; two of whom reported in favor of the defendant. The plaintiff, for various reasons, which are referred to in the opinion of the court, now moved to set the report aside.

*R. S. Hart*, for the plaintiff.

*W. Nelson & J. W. Tompkins*, for the defendant.

*By the Court*, McCoun, J. The report of referees, like the verdict of a jury, is only to be set aside, where the finding is clearly against the weight of evidence, or where, upon the trial, some rule of evidence or principle of law has been violated. The plaintiff complains, in the first instance, that the referees improperly received evidence of a set-off on the part of the defendant; he having been precluded from making a set-off by a judge's order, for his neglect to furnish a bill of particulars. We do not understand, however, that the evidence of work and services performed by James Brown (the defendant's testator) on the farm—and while living in the family of the plaintiff's intestate, Stephen Brown—was offered with a view to make out an indebtedness for such work and services; but with a view of showing that he earned his living as he went along, and contracted no debt for board and lodging, while he lived there. There being no proof of an *express* contract to pay for *board*, and the plaintiff's case proceeding entirely on the ground of an implied liability for a *quantum meruit*, it was certainly proper for the defendant to show that the plaintiff's demand was com-

Green *v.* Brown.

pensated at the time, by services rendered, and that therefore no such liability ever arose.

The next objection to be noticed is, that the referees allowed inquiries to be made respecting the pecuniary circumstances of the plaintiff's intestate, Stephen Brown, and of the defendant's testator, James Brown. The result of the inquiry on the cross-examination of the plaintiff's witness Osborn, showed a stronger probability that James was to pay for his board while living at Stephen's, than that his services were to be an equivalent, and that the one was to compensate the other. The inquiry there-fore, if improper, has not harmed the plaintiff, and furnishes no reason for setting aside the report. But such inquiries were not improper—considering the nature of the plaintiff's demand, *its origin and long* standing, and how it was attempted to be supported by oral testimony alone. The same may be said with respect to the objections taken on the cross-examination of David Van Vores, in relation to old Abraham Brown's means or resources. It was sought to charge James Brown with an *original*, and not a *collateral* liability to pay for his father's board and maintenance; and this by *circumstantial* rather than by *direct* and *positive proof* of a contract. And to rebut this, such *facts* as were attempted to be elicited were clearly admissible. The referees could better judge of the probability (in the absence of other evidence) of James' original undertaking to support his father by engaging board for him at Stephen Brown's, when they had evidence before them of the old man's acts and declarations in regard to his own ability or inability to pay for himself. Hence it would seem that the inquiries made of David Van Vores on his cross-examination, and of Benjamin Sill—a witness on the part of the defendant—as to the father's property and moneyed means, were not im-proper.

The next point is in regard to counsel's minutes of what Nathaniel Van Vores, a witness for the plaintiff before the referees, had testified on a former occasion before the surrogate, and which minutes were now introduced for the purpose of showing a contradiction in the statements of the witness, and

to impeach his credibility.   The witness had testified, before the referees, that he was present at a conversation between Stephen Brown and James Brown, in April, 1839, at a particular place which he designated, and which conversation was continued between James Brown and the witness, after Stephen had left them, and therein James had admitted that he owed Stephen for the board both of himself and his father, and that he had been trying to keep the money back for the benefit of Stephen's children, but now he found that he should be obliged to pay the money to him.   The amount was not mentioned. This was an important piece of testimony; because, if true, it established a legal liability within six years of the time of bringing the action.   In order to lay the foundation for contradictory evidence, the witness was asked, whether he was examined as a witness before the surrogate in opposing the proof of the will of James Brown.   He answered in the affirmative.   He was then asked, whether he testified on that occasion, that he could not recollect any conversation so as to relate it, which he had had with James Brown since he moved to the city of New-York, which he had previously stated was some nineteen years before.   The question was objected to, and the referees decided the witness might answer it or not, as he pleased; and the witness refused to answer it, saying he would answer no such question unless compelled.   For the purpose of proving what this witness did testify before the surrogate, Mr. Tompkins, one of the counsel on that occasion in support of the will, was sworn and examined before the referees.   He stated that he intended to take, and believed he did take, in his minutes at the time, what Van Vores testified to.   That he had his original minutes before him; but if he was to answer from his recollection alone, he could not say that he recollected any thing about it.   From the minutes it appeared that Van Vores testified on the subject of conversations he had had with James Brown in his lifetime.   Mr. Tompkins was then asked, " what, according to your recollection as assisted by your minutes now before you, did he testify on that subject?"   It was objected that Mr. Tompkins should not testify with his

Green *v.* Brown.

minutes before him, but should be required to testify from his recollection, after having been allowed to look at his minutes as a memorandum to refresh his memory. The objection was overruled. Mr. Tompkins then stated from his minutes, the testimony given by Van Vores as noted down by him; admitting that without his minutes, he could have no confidence in his recollection of Van Vores' testimony. The objections taken to this proof are threefold. 1. That Mr. Tompkins could not say positively that his minutes were correct. He could only say he *believed* they were correct. He intended them to be so. 2. That he had no recollection of the subject matter of his minutes; he relied entirely upon them for the testimony he gave; and 3. His minutes were not used to *refresh his memory*, for he had no memory on the subject.

With respect to the first objection, all that is required of a witness when testifying from a note or memorandum, is, that he should state it was made by him at or about the time of the occurrence which it speaks of, and that he intended it to be correct, and believes it to be so. As to the second and third objections, the general rule and practice is for a witness to speak from his recollection of the facts, after having referred to his notes or memorandum, and brought the facts fresh into his mind again. In this instance, however, the witness (Mr. T.) seems to have been unable to do so. He could only state what he did of Van Vores' former testimony, *from his minutes*, not from *any remembrance* or *recollection which he had of it.* Was he at liberty to do this, within any acknowledged rule of evidence? It appears to be admitted by all writers on evidence, that counsel's or even a judge's minutes of a trial, are not, per se, evidence on another trial. They can only be used or resorted to as memoranda to refresh the memory. (1 *Cowen & Hill's Notes,* 579. 1 *Binney,* 108.) And in using notes or memoranda, it is laid down in the text of Phillipps (1 *Phil. Ev.* 289) that if the witness cannot, from recollection, speak to the fact any further than as finding it stated in a written entry, his testimony will amount to nothing. There is a departure from the rule in a number of the English and American cases

collected in Cowen & Hill's Notes, 750 to 753. Still, in one case, *Lawrence* v. *Barker*, (5 *Wend.* 301,) our own supreme court adhered closely to it, and rejected the evidence of a memorandum made by a witness, who could only swear that he made it, and had no doubt he put down precisely what was said in the conversation which it related, but had no present recollection of the facts, independent of the paper. And in *Feeter* v. *Heath*, (11 *Wend.* 477,) Chancellor Walworth, in delivering the opinion of the court for the correction of errors, appears to have considered it necessary that a witness testifying after inspecting a memorandum in court, should be able, after such inspection, distinctly to recollect the facts independent of the written memorandum. This would seem to be the established rule in our state; and we cannot approve of the decision of the referees in receiving Mr. Tompkins' statement from his minutes, without overruling the decision in *Lawrence* v. *Baker*. Before setting aside the report for this cause, however, it should appear that the plaintiff has been prejudiced by it. On examining Van Vores' testimony before the surrogate, as furnished by Mr. Tompkins, it will be seen that it contains nothing contradictory of, or at variance with, the testimony he had just then given. The former related to the changed condition which he observed in James Brown, in May or June, 1843. And he had been in the habit of seeing him, as he stated, three or four times a year for the then last fifteen years; and the latter testimony related to conversations, and particularly the one in April, 1839. Hence there was no impeachment of his veracity, from any discrepancy in his testimony on the two different occasions.

A point has been made on the argument, of the referees' refusal to hear any further evidence either against or in support of the characters of Van Vores and Austin, two of the plaintiff's witnesses. Several witnesses had been sworn and examined on both sides touching their characters for truth, when the referees interposed. It does not appear that either party objected at the time, to their refusal to hear further witnesses in support of, or against, the character of the two men;

---

nor does it appear to have been an undue exercise of power on the part of the referees. They had a right to put a stop to the examination as they did. (2 *Cowen's Tr.* 991.) (*a*) Some other points have been made, including the general one, that the finding of the two referees is against the weight of evidence, and that for that cause it should be set aside.

We have not been inattentive to all the facts and circumstances which could be urged in favor of a claim of this character; but we cannot fail to perceive that there is much in the case to show, after the lapse of so many years, and the non-assertion of a legal right, if one ever existed, that the claim for the support of the old man, as well as for the board of the testator James Brown, addressed itself rather to his testamentary disposition and bounty, than to any legal obligation he was under; and that this suit has grown out of a family disappointment, which however undeserved or unmerited, is not a ground on which to base a legal recovery. Though there was room for a difference of opinion among the referees, and although a jury might be induced to find a verdict the other way, if the cause should be tried again, yet such a possibility does not justify the court in setting aside the report.

Motion denied.

(*a*) See *Nolton* v. *Moses, ante, p.* 31.

